### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **RICKY SAMAS,** | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **CASE NO. 3:12-cv-00151 (VLB)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **APRIL 23, 2014** |
| **Respondent.** | : | |

### MEMORANDUM OF DECISION DENYING PLAINTIFF'S MOTION TO VACATE, SET ASIDE OR CORECT SENTENCE
### [Doc. # 1]

Petitioner Ricky Samas (hereinafter "Petitioner") is currently incarcerated at Schuylkill Federal Correctional Institution in Pottsville, Pennsylvania. Pending before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 and motion for sentence modification pursuant to 18 U.S.C. § 3582(c)(2) filed by Petitioner, proceeding *pro se*, on February 1, 2012. [Dkt. 1.] Petitioner moves to set aside, vacate, or correct the sentence handed down in this court on January 8, 2010. The petitioner argues that he is entitled to relief because (1) his counsel at sentencing was ineffective for failing to file a motion to dismiss for lack of jurisdiction on the basis that no criminal complaint was filed; (2) his counsel at sentencing was ineffective for failing to file a motion to dismiss for lack of jurisdiction on the basis that the Grand Jury proceedings did not comply with Federal Rules of Criminal Procedure 6(c) and 6(f); (3) his counsel at sentencing was ineffective for failing to challenge the two point offense level enhancement he was given for possession of a firearm during a drug offense; (4)

his counsel at sentencing was ineffective for failing to seek a two-level reduction in his offense level for which he was eligible; (5) that he is eligible for modification of his sentence pursuant to 18 U.S.C. § 3582(c)(2) because he was sentenced to a term of imprisonment based on a sentencing range that has since been lowered by the Sentencing Commission; and (6) that his counsel at sentencing was ineffective for failing to challenge the calculation of the Petitioner's criminal history score calculated in the pre-sentencing report (the "PSR") prepared in advance of Petitioner's sentencing.  For the following reasons, the petition and motion for sentence modification is DENIED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### a. The Indictment

Petitioner was indicted in a three-count indictment on April 16, 2009, and was arrested and made his initial appearance before Magistrate Judge Holly B. Fitzsimmons on May 1, 2009.  Count One charged Petitioner with possessing with the intent to distribute a mixture containing more than 50 grams and containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(A)(iii).  Count Two charged Petitioner with possession with the intent to distribute a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)91) and 21 U.S.C. § 841(b)(1)(C).  Count Three charged Petitioner with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2).

### b.  The Plea

Petitioner's counsel, Wayne R. Keeney, entered an appearance at the May 1, 2009 arraignment.[1]  Petitioner plead guilty on September 14, 2009 to count one of the indictment, possessing with the intent to distribute a mixture containing more than 50 grams and containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1).  In the plea agreement, Petitioner agreed to plead guilty to Count One of the indictment, and in exchange the Government agreed that it would not file an information asserting that Petitioner had previously been convicted of a drug offense, and that it would move to dismiss the other two counts in the Indictment.  [Plea Agreement at 1, 6.][2]  The plea agreement states explicitly that "[t]he defendant acknowledges that upon conviction, had the Government filed such an information, he would have been subject to the imposition of a mandatory minimum sentencing penalty of twenty (20) years imprisonment, . . ."  [Plea Agreement at 2.]  The plea agreement also contains a stipulation, by which the Petitioner and the Government stipulated to the amounts of drugs possessed by the Petitioner at the time relevant to the Indictment.  Petitioner stipulated to 352 grams of cocaine base, and 398 grams of cocaine.  [Plea Agreement at 3.]  Both Petitioner and his attorney signed the plea agreement.

## c.  Presentence Report and the Calculation of the Sentencing Guidelines

---

[1] Attorney Keeney told the Court at sentencing that he was representing Petitioner *pro bono*.  [Sent. Tr. at 14:19-23.]
[2] The Plea Agreement can be found at *United States v. Samas*, No. 3:09-cr-00091 (D. Conn. Sept. 14, 2009), ECF No. 22.

After Petitioner's plea was entered, the Presentence Report was prepared by the United States Probation Office.[3]  The Presentence Report, using the United States Sentencing Commission Guidelines Manual (the "Sentencing Guidelines" or "Guidelines") concluded that Petitioner had a base offense level of 31. [Presentence Report (the "PSR") at ¶ 22.][4]  Because the offense involved both cocaine base and cocaine, the Presentence Report began by consulting the Application Notes to section 2D1.1 of the Sentencing Guidelines.  Section 6 of the Application Notes instructs that "[w]here there are multiple transactions or multiple drug types, the quantities of drugs are to be added."  U.S.S.G. § 2D1.1, comment. (n.6).  Section 10 of the Application Notes provides an equivalency table that allows the user to convert amounts of any drug into an equivalent amount of marijuana, so that the user can aggregate quantities of different drugs to arrive at a single base offense level, and provides specific instructions for cases involving cocaine base.  U.S.S.G. § 2D1.1, comment. (n.10).  Applying the amounts stipulated to by the parties to the equivalency table, the probation office determined that 352 grams of cocaine base was equivalent to 7,040 kilograms of marijuana, and 398 grams of cocaine was equivalent to 79.6 kilograms of marijuana, for a total combined amount of 7,119.6 kilograms of marijuana.  [PSR at ¶ 14.]  The probation office correctly concluded that 7,119.6 kilograms of marijuana generates a base offense level of 34, [PSR at ¶ 15], as it is "[a]t least

_____

[3] Although the Presentence Report was not filed on the docket in Petitioner's criminal case, the Court received a Chambers copy that was maintained in Chambers, and which the Court used in drafting this opinion.
[4] The Presentence Report relied on the Sentencing Guidelines effective November 1, 2008.  [PSR at ¶ 14.]  This opinion will cite to the Guidelines effective November 1, 2008 unless otherwise noted.

4

3,000 KG but less than 10,000 KG of marijuana," U.S.S.G. § 21.1D(c)(3).  The probation office then correctly subtracted two (2) offense levels pursuant to Application Note 10(D)(i), which offers such reduction when the offense involves cocaine base and one or more other controlled substance, resulting in a base offense level of 32.  [PSR at ¶ 15.]  The probation office then added two offense levels due to Petitioner's possession of a firearm during the commission of the offense pursuant to Sentencing Guidelines section 2D1.1(b)(1), resulting in an adjusted offense level of 34.  [PSR at ¶ 16.]  Because the Government agreed in the Plea Agreement to recommend a two level reduction under section 3E1.1(a) and to move the Court for an additional one level reduction under section 3E1.1(b), the probation office included both of those reductions in the Presentence Report's calculation of the offense level, which led to a total offense level of 31.

The Presentence Report also computed the criminal history category for Petitioner.  [PSR at ¶¶ 23-27.]  Petitioner was assigned one point pursuant to Guidelines section 4A1.1(c) for a $2,000 fine handed down in state court on August 31, 1999 resulting from a conviction for Possession of Narcotics.  [PSR at ¶ 24.] The Presentence Report notes that the Petitioner entered an *Alford* plea in that case.[5]  Petitioner was assigned three points apiece pursuant to Guidelines section 4A1.1(a) for two felony convictions in state court for drug related crimes,

---

[5] An *Alford* plea derives its name from *North Carolina v. Alford*, 400 U.S. 25 (1970), and is a plea in which the defendant "does not confirm the factual basis for the plea."  *United States v. Savage*, 542 F.3d 959, 962 (2d Cir. 2008) ("The distinguishing feature of an Alford plea is that the defendant does not confirm the factual basis for the plea.") (citation omitted).

one on October 6, 2000, and another on October 10, 2003, resulting in a total of seven points resulting from prior convictions.  [PSR at ¶ 25-26.]  The probation office then added two points pursuant to Guideline section 4A1.1(d), because the relevant conduct occurred while Petitioner was on probation for one of his state court convictions.  [PSR at ¶ 27.]  One more point was added pursuant to Guidelines section 4A1.1(e), as the relevant conduct occurred within two years of Petitioner's last release from incarceration.  [PSR at ¶ 27.]  This gave Petitioner ten criminal history points, putting him in criminal history category V.  The sentencing table provided by the Sentencing Guidelines recommends a term of imprisonment in the range of 168 to 210 months for a defendant with an offense level of 31, and a criminal history category of V.

### d.  The Sentencing

Petitioner was sentenced on January 8, 2010 to 168 months of imprisonment to be followed by five years of supervised release.  Counsel for Petitioner did not object to the Presentence Report at Petitioner's sentencing. [Sent. Tr. at 3:10-21.][6]  Petitioner filed a notice of appeal on January 19, 2010.  On January 11, 2011 the Second Circuit granted Attorney Keeney's motion to withdraw as counsel for Petitioner, and assigned attorney Kim Bonstrom as counsel under the Criminal Justice Act.  On September 2, 2011, Attorney Bonstrom filed a motion seeking permission to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), in which she identified the possible issues she had researched and analyzed, concluded that none of the issues had

---

[6] The transcript of the sentencing hearing can be found at *United States v. Samas*, No. 3:09-cr-00091 (D. Conn. May 5, 2011), ECF No. 38.

any arguable merit, and asked to withdraw as counsel.  On September 2, 2011
Attorney Bonstrom filed an *Anders* brief, analyzing the issues she had identified
and why they had no arguable merit.  On May 8, 2012 the Second Circuit granted
Attorney Bonstrom's motion to withdraw and granted the Government's motion
to dismiss Petitioner's appeal of his sentence of imprisonment as precluded by
the appellate waiver in his plea agreement, and granted the Government's motion
for summary affirmance of the non-imprisonment component of Petitioner's
sentence.

### e.  These Proceedings

Petitioner filed this habeas petition on February 1, 2012, while his direct
appeal was still pending with the Second Circuit.  On October 10, 2012 Petitioner
filed a petition for writ of mandamus with the Second Circuit seeking an order
directing this Court to grant the relief sought in his habeas petition or to hold an
evidentiary hearing.  On April 4, 2013, the Second Circuit denied Petitioner's
mandamus petition without prejudice to renewal if this Court does not act on the
habeas petition within ninety days.

## II.  LEGAL STANDARD

A "'collateral attack on a final judgment in a criminal case is generally
available under § 2255 only for a constitutional error, a lack of jurisdiction in the
sentencing court, or an error of law or fact that constitutes a fundamental defect
which inherently results in complete miscarriage of justice.'"  *Graziano v. United
States*, 83 F.3d 587, 589-90 (2d Cir. 1996) (internal quotations omitted).  The relief
permitted under § 2255 should be "narrowly [limited]" in order to maintain "a

respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citing *United States v. Addonizio*, 442 U.S. 178, 184 & n.11 (1979)).

There is no need for this Court to conduct a hearing on this habeas petition.  Although the courts generally "look with disfavor on summary rejection of a habeas petition", *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990) (quotation omitted), the text of § 2255 provides that the court need not conduct a hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b) (2014); *see also Aiello*, 900 F.2d at 534 (finding no reversible error in the failure to conduct a hearing where the petition omitted "meritorious allegations that can be established by competent evidence" and the district court judge that ruled on the petition also presided over petitioner's trial) (citation and internal quotations omitted).

## III.  ANALYSIS

### A. Waiver of Rights in Plea Agreement

By the terms of the plea agreement, on which the Petitioner was thoroughly canvassed, Petitioner expressly waived the right to appeal or collaterally attack his sentence if the term of imprisonment did not exceed 240 months.  [Plea Agreement at 4.]  The complete text of the waiver is:

> The defendant acknowledges that under certain circumstances he is entitled to appeal his conviction and sentence. It is specifically agreed that the defendant will not appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241,

the conviction or sentence of imprisonment imposed by the Court if that sentence does not exceed 240 months. The defendant expressly acknowledges that he is knowingly and intelligently waiving these rights.

[Plea Agreement at 4.]

Petitioner's sentence of 168 months of imprisonment is below the threshold set by the waiver, and thus the sentence satisfies the waiver's condition.

## 1.  Petitioner's Challenge to the Waiver Provision

"There is no general bar to a waiver of collateral attack rights in a plea agreement." *Frederick v. Warden*, 308 F.3d 192, 195 (2d Cir. 2002) (citation omitted).  However, the waiver does not foreclose Petitioner from attacking "the validity of the process by which the waiver has been procured, here, the plea agreement." *Frederick*, 308 F.3d at 195 (citation omitted).

Petitioner did not challenge the waiver provision of his Plea Agreement in either his habeas petition or his "renewed" habeas petition, a fact noted by the Government in its response to Petitioner's habeas petition.  [Dkt. 7 at 12-13.] Petitioner first challenges the waiver provision in his reply to the Government's opposition memorandum.  [Dkt. 9 at 3-5.]  Although Petitioner asserts that he will show that "the agreement was not made knowingly, intelligently, and voluntarily with the ineffective assistance of counsel," [Dkt. 9 at 3], Petitioner does not argue that the waiver was not made knowingly intelligently, and voluntarily.  Petitioner argues (a) that the plea agreement is void because the Government breached the agreement; and (b) that he received ineffective assistance of counsel because the Plea Agreement by its terms allowed the Court to consider the conduct

9

underlying Count Two and Count Three of the indictment at sentencing.  Neither of these arguments has any merit.

<u>(a) Breach by the Government</u>

Petitioner's first argument appears to be that the offense level enhancement the Court gave to Petitioner pursuant to Guidelines section 2D1.1(b)(1) for possessing a firearm in the commission of his offense amounted to a breach by the Government of the Plea Agreement, as the Government had promised in the plea agreement to move to dismiss Count Three of the Indictment, which charged Petitioner with being a felon in possession of a firearm.  Petitioner seems to be arguing that the spirit of the agreement was that he would plead guilty to Count One, and in return the Government would eliminate his exposure to Count Two and Count Three, and that the Government violated the spirit of the agreement by seeking the firearm enhancement. Although Petitioner is correct that the waiver will not apply if the Government has breached the plea agreement, *see, e.g.*, *United States v. Garcia*, 166 F.3d 519, 521 (2d Cir. 1999), Petitioner's argument lacks merit.  Petitioner explicitly agreed in the Plea Agreement to allow the Court to consider the conduct underlying Count Two and Count Three of the Indictment:  "After sentencing the United States will move to dismiss Counts Two and Three of the indictment, as the conduct underlying the dismissed counts will have been considered in determining the appropriate sentence."  [Plea Agreement at 6.]

Similarly, in a section titled "Information to the Court", the Petitioner agreed that:

> The Government expressly reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case.  Moreover, it is expressly understood that the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office, and will provide the Probation Officer with access to its file, with the exception of grand jury material.

[Plea Agreement at 4.][7]  This provision explicitly preserved the Government's right to advocate for sentencing enhancements, and thus the Government did not breach the agreement by seeking the firearms enhancement.

Finally, Petitioner expressly agreed in the Plea Agreement that "[t]he defendant expressly understands and agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Officer who prepares the presentence investigation report."  [Plea Agreement at 2-3.]  The Court explicitly notified Petitioner that "[t]he United States Sentencing Guidelines are advisory only" at the change of plea hearing. [Plea Hrg. Tr. at 5:18-19.][8]  The Court further advised Petitioner: "I note that there is no stipulated sentencing guideline in your Plea Agreement, and therefore, I know not what you're contemplating, but certainly you should be aware that if I enter a sentence which is greater than that which you were thinking you may get,

---

[7] Although the text of 18 U.S.C. § 3661 is not contained within the Plea Agreement, that statute provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661 (2014).

[8] The transcript of the plea hearing can be found at *United States v. Samas*, No. 3:09-cr-00091 (D. Conn. Mar. 4, 2010), ECF No. 37.

you would not be permitted to withdraw your plea once I accept it." [Plea Hrg. Tr. at 6:2-8.] The Court again advised Petitioner:

> THE COURT: As I indicated earlier, one of the bases of the determination of the plea is the Sentencing Guidelines, however, those guidelines are advisory, and you should be disavowed of any notion that any recommendation would necessarily determine the sentence you receive. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

[Plea Hrg. Tr. at 17:1-8.]

Petitioner also asserts that the Court's consideration of certain conduct underlying the offenses in Count Two and Count Three of the indictment made the plea agreement "vague and ambiguous at heart." [Dkt. 9 at 4.] Petitioner does not say which part of the plea agreement is vague and ambiguous. Regardless, the Plea Agreement is not vague or ambiguous, as the agreement unambiguously allows for the Court to consider the conduct underlying Count Two and Count Three in determining Petitioner's sentence.

Petitioner is also incorrect that Court's consideration of the conduct underlying Count Two and Count Three of the indictment made it such that "the plea agreement was in fact not benefitical [sic] to him at all." [Dkt. 9 at 4.] Petitioner received several benefits from entering into the Plea Agreement. The Government "agreed to not file an information as provided by 21 U.S.C. § 851 asserting that he had previously been convicted of a felony drug offense." [Plea Agreement at 2.] Petitioner expressly acknowledged the benefit of this in the Plea Agreement: "The defendant acknowledges that upon conviction, had the Government filed such an information, he would have been subject to the

12

imposition of a mandatory minimum sentencing penalty of twenty (20) years imprisonment, a maximum penalty of life imprisonment, a fine of $8,000,000, and a ten (10) year term of supervised release." [Plea Agreement at 2.] In accordance with the Plea Agreement, the Government did not file this information, and Petitioner was not exposed to the twenty year mandatory minimum of 21 U.S.C. § 841(b)(1).

Petitioner also received the benefit of the dismissal of the Government's agreement to recommend a three offense level reduction under Guidelines sections 3E1.1(a) and (b), [Plea Agreement at 3], and the Government's promise to move to dismiss Count Two and Count Three of the indictment following Petitioner's sentencing, [Plea Agreement at 6], as the Government satisfied both of these obligations. *United States v. Ricky Samas*, 3:09-cr-00091 (D. Conn. Jan. 8, 2010), ECF Nos. 30, 32.

### (b)  Ineffective Assistance of Counsel

Petitioner's second argument challenging the Plea Agreement is that he received ineffective assistance of counsel in the negotiation over the agreement. "In order to prevail on an ineffective assistance of counsel claim, appellant must show first that his counsel's performance was deficient and second that the deficiency caused actual prejudice to his defense." *Frederick*, 308 F.3d at 197 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). On the first prong of the test "[t]he court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that 'there are countless ways to provide effective assistance in any given

case' and that 'even the best criminal defense attorneys would not defend a particular client in the same way.'"  *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689).  The second prong of the *Strickland* test requires a court to consider whether "but for counsel's unprofessional errors, there exists a reasonable probability that the result would have been different."  *United States v. Torres*, 129 F.3d 710, 716 (2d Cir. 1997) (citing *Strickland*, 466 U.S. at 687, 694).

In a case such as this where a petitioner has waived his right to collateral attack of his sentence, "[t]o raise a claim despite a guilty plea or appeal waiver, the petitioner must show that the plea agreement was not knowing and voluntary, . . . because the advice he received from counsel was not within acceptable standards."  *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (internal citation and quotations omitted).  Petitioner cannot avoid the waiver by "challenging [his] attorney's role in shaping [his] bargaining position", but rather must challenge his attorney's "*advice* about that bargaining position."  *Parisi*, 529 F.3d at 138-39 (citation omitted).

Petitioner argues that his counsel was ineffective for allowing references to the conduct underlying Count Two and Count Three to appear in the Plea Agreement and the Presentence Report, thereby allowing such conduct to affect the guidelines calculations for his sentence on Count One.  [Dkt. 9 at 4.] Specifically, Petitioner appears to be asserting that his attorney should not have allowed a reference to the cocaine underlying Count Two to appear in Section 3 of the Plea Agreement, in which the parties stipulated to the amount of the

controlled substances possessed by the Petitioner at the relevant time.  He also appears to be asserting that his counsel should not have allowed any mention of the firearm underlying Count Three to appear in the Presentence Report.

Both of Petitioner's arguments are without merit, as he provides no evidence at all so support his claim that his counsel's performance was deficient, and the Court sees no such evidence in the record before it.  The Court must bear in mind the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Strickland*, 466 U.S. at 689. Without facts to support such claims, the Court has no way to find that his attorney's conduct was in any way deficient.  In regards to the stipulated amount of cocaine, that was in the Plea Agreement when Petitioner signed it, and as noted above, the Court has concluded that Petitioner's entry into the Plea Agreement was knowing and voluntary.  In regards to references in the Presentence Report to the firearm underlying Count Three, as noted above, Section 5 of the Plea Agreement explicitly gave the Government the right to discuss the facts of the case with the probation office.  The Petitioner has failed to establish error in the subsequent sharing of that information with the probation office, or in the inclusion of Section 5 in the Plea Agreement. Indeed, according to the express terms of the plea agreement which Petitioner knowingly and voluntarily signed and stated he understood, the Government was obligated to, reserved the right to, and could have informed the Court in its sentencing

memorandum or at sentencing of, both the firearm and the amount of cocaine. Petitioner's buyer's remorse does not render his counsel ineffective.

## B. Additional Ineffective Assistance of Counsel Claims

In addition to his assertion of ineffective assistance in regards to the waiver provision in the Plea Agreement, Petitioner also raises a number of purported ineffective assistance of counsel claims in his habeas petition. The Court notes that although Petitioner attempts to frame several of his claims as claims for ineffective assistance of counsel, these claims are an effort to "dress up his claim[s] as [violations] of the Sixth Amendment" when Petitioner "in reality is challenging the correctness of his sentence under the Sentencing Guidelines." *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998). As such they are barred by the waiver in the Plea agreement. *Djelevic*, 161 F.3d at 107. Even if they were hypothetically not barred by the waiver agreement none of the claims would have any merit.

## 1.  Failure to Raise Challenge to Jurisdiction

Petitioner asserts in Part I that he received ineffective assistance of counsel because his attorney did not move to dismiss the case on the grounds that no complaint was filed, and thus the court lacked jurisdiction. [Pet. at 5-8.]

The indictment filed against Petitioner satisfied the legal requirements for indictments, and was therefore sufficient to commence the action. As explained by the Second Circuit Court of Appeals:

> It is well settled that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same

> offense." *Hamling v. United States*, 418 U.S. 87, 117, 41 L. Ed. 2d 590, 94 S. Ct. 2887 (1974). We have explained that an indictment must "charge[] a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). Nevertheless, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Id.* (internal quotation marks omitted).

*United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998).

The indictment filed against Petitioner tracked the language of the statutes under which Petitioner was charged, and also provided sufficient factual detail, and therefore satisfies the requirements as described by the Second Circuit, as well as the requirements of Federal Rule of Criminal Procedure 7(c).

To the extent that Petitioner argues that the Government lacked standing because the Government failed to file a complaint that satisfies the standing requirement outlined in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), Petitioner is incorrect.  The standing inquiry put forth in *Lujan* is not applicable to criminal prosecutions of the sort filed against Petitioner.  *Cf. United States v. Siceloff*, Criminal No. 09-313, 2010 U.S. Dist. LEXIS 35537, at *2-3 (W.D. Pa. Apr. 6, 2010) (denying criminal defendant's request that "the government be compelled to 'prove standing' to bring their 'claim.'").  As a result, Petitioner neither received deficient representation on this issue, nor can Petitioner show any that he suffered any undue prejudice as a result of his attorney's conduct.

## 2.  Failure to Allege Defects in Grand Jury Process

Petitioner argues in Part II that he received ineffective assistance of counsel because his attorney failed to challenge the grand jury proceedings.

[Pet. at 9-10.]  Specifically, Petitioner asserts that the indictment failed to comply with Rules 6(c) and 6(f) of the Federal Rules of Criminal Procedure.

Petitioner asks the Court to "review the Grand Jury record and make a finding of whether the Indictment was returned properly against the Petitioner pursuant to Rule 6(c)."  [Pet. at 9.]  Specifically, Petitioner asserts that there is no evidence that the indictment was signed by the grand jury foreperson as directed by Rule 6(c) because the signature line contains only the text "/s/."  However, this failure of the Grand Jury foreman to sign the indictment is not fatal to the indictment.  *Hobby v. United States*, 468 U.S. 339, 345 (1984) ("Even the foreman's duty to sign the indictment is a formality, for the absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment.") (citing *Frisbie v. United States*, 157 U.S. 160, 163-165 (1895)).  Further, from this Court's own examination of the Indictment, it appears that there once was an original signature on the document, which was then replaced with the "/s/."  Replacement of an original signature with an "/s/" is customary security procedure to eliminate risks inherent in the public posting of court records, and the Court sees no reason to investigate this any further.

In regards to Rule 6(f), Petitioner asks the Court to "make a finding as to whether at least twelve jurors concurred in the return of the indictment and whether the Indictment was returned in open court," and asserts that his counsel was ineffective for not filing such a motion.  [Pet. at 9-10.]  However, Petitioner has offered no evidence at all tending to show that Rule 6(f) was not complied with.  The Court thus rejects Petitioner's request and finds no basis for the

18

corresponding claim of ineffective assistance of counsel.  *Cf. Kalani v. United States*, No. 02 Civ. 8663, 2002 U.S. Dist. LEXIS 21113, at *31 (S.D.N.Y. Oct. 31, 2002) (rejecting petitioner's claim in 2255 petition that his indictment was not returned in open court in the presence of the grand jury where petitioner failed to provide any "specific factual allegations tending to show that the Indictment was returned in violation of the Local Rules in this District and Rule 6(f) . . ." and rejecting related claim of ineffective assistance of counsel for the same reason); *United States v. Canty*, No. 1-97-CR-97, 1998 U.S. Dist. LEXIS 20055, at *3-4 (N.D.N.Y. Dec. 21, 1998) (denying defendant's motion for disclosure and inspection of the grand jury concurrence form where defendant "has not presented any specific factual allegations tending to show that the indictment lacked the concurrence of twelve grand jurors" nor demonstrated a "compelling or particularized need to examine the grand jury concurrence form" and where the request was "aimed generally at confirming the Government's compliance with the twelve-juror minimum requirement" of Rule 6(f)) (quotation and citations omitted).

### 3.  Failure to Effectively Challenge the Firearm Enhancement

Petitioner argues in Part III that he received ineffective assistance of counsel because his counsel failed to "file[] the proper motion", [Pet. at 11], to challenge the two points added to the calculation of Petitioner's offense level for possession of a firearm during the commission of the offense pursuant to Guidelines § 2D1.1(b)(1).  In regards to the first prong of the *Strickland* inquiry, Petitioner asserts that the "scant mentioning" of the firearm enhancement in the

19

sentencing memorandum prepared by Petitioner's trial counsel fell below the standard required of his attorney.  In regards to the second prong, Petitioner argues that he was prejudiced by his attorney's conduct because (1) he should not have received the firearm enhancement because the Government had agreed to dismiss the gun-related count of the indictment, and (2) that the firearm enhancement violated his due process because it was not charged in the Indictment.

Petitioner relies upon *United States v. O'Brien*, 560 U.S. 218 (2010) to argue that the firearm enhancement should not have been applied without being charged in the indictment.  However, that case does not stand for the point Petitioner asserts that it does, and instead reinforces the court's application of the firearm enhancement at sentencing.  *Cf. United States v. Vallejo*, No. CR 09-0485, 2010 U.S. Dist. LEXIS 71292, at *16-19 (June 7, 2010) (considering and rejecting defendant's challenge to the Guidelines § 2D1.1(b)(1) enhancement where defendant similarly argued that *United States v. O'Brien* requires that defendant's possession of a firearm must be proven beyond a reasonable doubt in order to be a sentencing factor).  The *O'Brien* court held that the machine gun provision of 18 U.S.C. § 924(c)(1)(B)(ii) was an element of the crime and thus must be proven to a jury beyond a reasonable doubt.  *See O'Brien*, 560 U.S. at 235.  Under section 924(c)(1)(B)(ii) a defendant convicted of using a machine gun during a crime of violence or drug trafficking crime faces a 30 year mandatory minimum.  A defendant convicted of using a gun that is not a machine gun during the commission of the same crimes faces only a five year mandatory minimum

under section 924(c)(1)(A)(i).  The ruling in *O'Brien* effectively means that a defendant cannot be convicted of using a gun that is not a machine gun, and then be sentenced as though he had used a machine gun, thus triggering the 30 year mandatory minimum, without the Government having to prove to a jury beyond a reasonable doubt that the defendant had used a machine gun.

As the *O'Brien* court noted, there is a difference between the elements of a crime, and sentencing factors.  The elements of a crime, such as Count Three in the indictment in this case, must be proven to a jury beyond a reasonable doubt. *See, e.g.*, 560 U.S. at 224.  Sentencing factors, on the other hand, need only be "proved to a judge at sentencing by a preponderance of the evidence."  560 U.S. at 224.  Additionally, a judge may only use sentencing factors to sentence an offender "within the range prescribed by statute."  560 U.S. at 224 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000)). The court did not impose a sentence above the maximum statutory sentence for the offense of conviction.

The Court's application of the firearm enhancement was consistent with *O'Brien*, as well as with the Second Circuit's existing precedent regarding the application of Guidelines § 2D1.1(b)(1), which provides that a defendant "is subject to a two-level enhancement under § 2D1.1(b)(1) for possession of a dangerous weapon if he "constructively possessed the weapon by having dominion . . . or control over the item itself, or dominion over the premises where the item [was] located." *United States v. Herrera*, 446 F.3d 283, 287 (2d Cir. 2006) (quoting *United States v. Ortega*, 94 F.3d 764, 768 (2d Cir. 1996)).  Further, the Application Notes for section 2D1.1(b)(1) themselves direct that the enhancement

"should be applied if the weapon was present, unless it is clearly improbably that the weapon was connected with the offense."  U.S.S.G. § 2D1.1(b)(1), comment. (n.3).  Under Second Circuit case law, there is a two-step burden-shifting analysis for the application of the section 2D1.1(b)(1) enhancement: "[1] once the government has established that a weapon's presence was reasonably foreseeable to the defendant during conduct (*i.e.*, the storage and cutting of drugs) relevant to the offense (*i.e.*, distribution of drugs) at issue, the enhancement will apply, . . . unless [2] the defendant demonstrates that it is clearly improbable that the weapon was connected with the drug offense." *United States v. Smith*, 215 F.3d 237, 241 (2d Cir. 2000) (citations omitted).

The Presentence Report provided significant factual detail about the firearm found when Petitioner was arrested, [PSR at ¶ 11.], noting that Petitioner was taken from the driver's seat of his car when he was arrested, and that there was another individual in the front passenger seat at the time of the arrest.  [PSR at ¶ 10.]  The firearm, a semiautomatic pistol, that was later determined to contain eight live rounds of ammunition, was found lying on the front passenger seat. [PSR at ¶ 11.]  At the sentencing hearing, the Government provided an oral recitation of the offense conduct, including that "In the front seat of the car, a -- after the two individuals were removed, a 9-millimeter semiautomatic pistol was recovered, as well."  [Sent. Tr. at 10:2-4.]  When questioned by the Court, Petitioner admitted that the other individual arrested at the time had been an associate.  [Sent. Tr. at 11:5-6.]  Petitioner's counsel then clarified that by admitting that the other individual was an "associate," Petitioner meant that they

were associated with one another in regards to the relevant drug transaction. [Sent. Tr. at 11:7-19.]

Petitioner's counsel challenged the firearm enhancement both in his sentencing memorandum and at the sentencing hearing, arguing that the fact that Petitioner did not carry the gun on his person when attempting to engage in a drug-related transaction was evidence that Petitioner did not have custody and control of the gun.  [Defendant's Memorandum In Aid of Sentencing at 1, *United States v. Samas*, 3:09-cr-00091 (D. Conn. Dec. 14, 2009), ECF No. 28; Sent. Tr. at 12:3-6.]  Petitioner's counsel also argued at the sentencing hearing that Petitioner was not in the car when he was arrested, and that the gun was on the passenger side of the vehicle, and thus Petitioner was not in the immediate proximity of the gun.  [Sent. Tr. at 10:18-23.]  Although the Presentence Report noted that the other individual arrested with Petitioner had submitted a letter to Petitioner's attorney claiming that the firearm was his and that Petitioner had not known of the gun, [PSR at ¶ 11], the sentencing judge need not accept the assertion as true.

The Government satisfied its burden of establishing that the weapon's presence was reasonably foreseeable to the Petitioner during conduct relevant to the offense in this case.  "The applicability of specific offense characteristics such as the possession of weapons during a narcotics offense is governed by the relevant-conduct sentencing guideline."  *United States v. Smith*, 215 F.3d at 240 (citing U.S.S.G. § 181.3(a)).  "With respect to drug offenses, relevant conduct consists of 'all acts and omissions . . . that were part of the same course of

conduct or common scheme or plan as the offense of conviction.'"  *United States v. Smith*, 215 F.3d at 240 (citing U.S.S.G. § 181.3(a)(2)).  Regardless of whether Petitioner was in the car at the time he was arrested, Petitioner transported himself, his drugs and his associate who admitted possession of the firearm in the automobile where the firearm was recovered.  The transportation of the drugs in the automobile was "relevant" to the offense conduct, and thus the enhancement is applicable in this case.  *Cf. United States v. Smith*, 215 F.3d at 240 (finding that the "storing and cutting of drugs is 'relevant' to the offense of narcotics trafficking" and thus the section 2D1.1(b)(1) enhancement "is applicable in cases where a weapon is present on the premises where drugs are stored.") (citations omitted).

Even assuming hypothetically that the firearm was carried by Petitioner's associate, and that the court accepted the representation of a drug dealing associate that Petitioner had no actual specific  knowledge of the weapon's presence in the car, the result would be the same.  The Second Circuit has "upheld the application of a section 2D1.1.(b)(1) enhancement when the defendant lacked personal knowledge of the weapon's existence on the premises where drugs were being processed, as long as the possession of firearms by the others involved in the offense was reasonably foreseeable to the defendant."  *United States v. Smith*, 215 F.3d at 240 (citing *United States v. Soto*, 959 F.2d 1181, 1186-87 (2d Cir. 1992)).  The Court finds no error in the conclusion that Petitioner had constructive possession of the gun, as it is quite possible that

Petitioner could have expected his associate to be armed, even if he had no

actual knowledge of the gun.  The Court explained at the sentencing hearing:

> I have taken that into consideration, and particularly in light of the fact that Mr. Samas was told that it would all be made good, that did not present a circumstance where a firearm was needed or seemed -- would have seemed to have needed to be employed, but there are other circumstances when one is carrying around the amount of money necessary to purchase that amount of drugs, or where one is carrying around that amount of drugs, where the use of a firearm would be a standard feature.

[Sent. Tr. at 12:11-20.]  *Cf. United States v. Hertular*, 562 F.3d 433, 447-448 (2d Cir.

2009) (affirming application of the section 2D1.1(b)(1) weapon enhancement

where defendant drug trafficker had told confidential informant he could supply

hand grenades and where the court found that defendant "more likely than not

had such grenades in his possession, either actually or constructively through

co-conspirators.") (citations omitted).

The Court also explained at the sentencing hearing:

> Two levels are added because a dangerous weapon; that is, a firearm, was in Mr. Samas' possession. While the Court notes that Mr. Samas was not in physical possession of the firearm, he did have constructive possession of the firearm as it was both within his reach and, therefore, the weapon was both available for his use and he likely knew of its availability. It is not inconceivable that that weapon could have been used in the commission of this offense.

[Sent. Tr. at 4:16-24.]

Although the court did not use the words "preponderance of the evidence"

or "more likely than not" in the sentencing hearing, the court, relying on

information presented in the Presentence Report and testimony at the sentencing

hearing, clearly found that it was more likely than not that Petitioner had actual or

constructive knowledge of the firearm and dominion and control  over the vehicle

in which the firearm  was present.  The Court found that "in today's world" a transaction involving a "large quantity of drugs" "does not usually occur without the presence of some form of protection, i.e., firearm."  [Sent. Tr. at 11:15-22.]. The court's statements clearly demonstrate that it found that the government has established that the presence of a firearm was reasonably foreseeable to the defendant during conduct of the offense but the defendant failed to meet his high burden of demonstrating that it is *clearly improbable* that the weapon was connected with the drug offense.

Regarding Petitioner's claim that he received ineffective assistance of counsel, he has failed to satisfy the first prong of the *Strickland* test, as his attorney in fact challenged the application of the firearm enhancement; the fact that the Court rejected his attorney's argument does not mean that Petitioner received deficient counsel.  Even if the Court were to find some deficiency in Petitioner's counsel, Petitioner has not satisfied the second prong of the *Strickland* test, as there is no indication that Petitioner caused actual prejudice to his defense.  Petitioner is incorrect that *United States v. O'Brien* commands a different outcome.  Finally, as noted above, the Government did not breach the plea agreement by recommending the application of the firearm enhancement, and thus Petitioner is incorrect that he was prejudiced by his attorney's failure to challenge the sentencing enhancement on such grounds.

## 4.  Failure to Object to Petitioner's Criminal History Score

Petitioner argues that his counsel was ineffective for failing to object to the criminal history score calculated by the probation office and adopted by the

Court.  [Pet. at 15-17.]  Petitioner asserts that the criminal history score assigned to him was incorrect, and that as a result he received a higher sentence than he might have otherwise.  However, Petitioner fails to provide any evidence that his attorney's conduct was deficient, other than making the conclusory assertion that his attorney should have challenged the criminal history score.  It is true that Petitioner and his counsel did not challenge the criminal history score in either Petitioner's sentencing memorandum or at the sentencing hearing.  In the sentencing memorandum, Petitioner agreed with the probation office's computation of his criminal history score and that he was properly in criminal history category V.  Petitioner does not assert that his counsel filed this memorandum without his consent or without consulting him.

Further, even assuming hypothetically that his counsel was deficient, Petitioner suffered no prejudice, as his criminal history score was calculated correctly.  Petitioner argues that an August 31, 1999 state court conviction for Possession of Narcotics, for which Petitioner received a $2000 fine and no jail time, was "stale" and should not have been included in his criminal history. [Pet. at 17.]  Petitioner was assigned one point for this conviction in the Presentence Report pursuant to Guidelines § 4A1-1(c).  [PSR at ¶ 23.]  Petitioner argues that this conviction was too old to have been included in his criminal history. Petitioner is incorrect, as the Guidelines provide that "[a]ny . . . prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted."  U.S.S.G. § 4A1.2(e)(2).  The relevant conduct for the

27

instant offense occurred on January 6, 2009, [Indictment at 1-2],[9] and the challenged conviction was handed down on August 31, 2009, bringing the instant offense within the ten year limit set by section 4A1.2(e)(2).

Petitioner also argues that because he received only a $2,000 fine and did not receive any jail time or probation, this offense was a "petty" offense, and thus he should not have received a criminal history point for the offense.  [Pet. at 15-16.]  Petitioner is incorrect on both points.  First, although the Presentence Report does not identify the statute under which Petitioner was convicted in 1999, Possession of Narcotics is criminalized under Connecticut state law at Connecticut General Statutes § 21a-279(a).  In spite of the fact that Petitioner was sentenced only to a $2000 fine, Possession of Narcotics is a felony in Connecticut.  *See* Conn. Gen. Stat. § 21a-279(a) (2014) ("Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned . . ."); *see also State v. Rogers*, 17 A.3d 1109, 1115 (Conn. App. Ct. 2011) (noting that section 21a-279 is an "unclassified felony").  Petitioner is incorrect that his offense becomes a petty offense or a misdemeanor by virtue of his relatively lenient sentence, and the cases he cites do not support his point.  For example, in *Blanton v. City of North Las Vegas*, 489 U.S. 538, 543 (1989), the Supreme Court looked at the maximum sentence carried by the

---

[9] The indictment can be found at *United States v. Samas*, No. 3:09-cr-00091 (D. Conn. Apr. 16, 2009), ECF No. 1.

offense in considering whether an offense is a petty offense, not at the actual sentence handed down to a defendant.

Second, the Sentencing Guidelines expressly provide that "[s]entences for misdemeanor and petty offenses are counted," U.S.S.G. § 4A1.2(c), except for certain enumerated offenses and offenses "similar" to those enumerated offenses that are counted only if certain conditions are met, U.S.S.G. § 4A1.2(c)(1), and certain enumerated offenses and offenses "similar" to those enumerated offenses that are never counted, U.S.S.G. § 4A1.2(c)(2). Petitioner's 1999 conviction was a felony conviction, and thus not eligible for either of the section 4A1.2(c) exceptions. Further, even if Petitioner's 1999 conviction were to hypothetically be deemed a petty crime or a misdemeanor, the exception for certain petty offenses and misdemeanors does not apply to Petitioner's conviction for Possession of Narcotics. Although the Second Circuit has adopted a test for determining whether an offense is "similar" to one of the offenses specifically enumerated in sections 4A1.2(c)(1) and (2), *see, e.g.*, *United States v. Ubiera*, 486 F.3d 71, 74-75 (2d Cir. 2007) (citations omitted), the court need not even reach this test, as Petitioner has not named which offense enumerated in those sections is similar to the offense of Possession of Narcotics, nor can Petitioner do so, as on its face Possession of Narcotics is not similar to any of those enumerated offenses. *Cf. United States v. Mazza*, 503 Fed. Appx. 9, 11 (2d Cir. 2012) ("Exceptions for certain minor infractions (such as traffic violations and loitering) are listed in section 4A1.2(c), but drug possession is not among them.") (citation omitted). In fact, the offense of Possession of Narcotics

is on its face more similar to the instant offense.  Petitioner is unable to avail himself of the exceptions contained within sections 4A1.2(c)(1) and (2), and thus cannot show that he received ineffective assistance of counsel on this issue.

**5. Failure to Challenge The Use of Certain State Court Convictions in Computing Petitioner's Criminal History Score**

**a.  Attribution of Certain State Court Convictions**

In Part VII, Petitioner asserts that the court failed to ask Petitioner if two of the criminal convictions used to compute his criminal history score in the Presentence Report were his convictions.  [Pet. at 18-19.]  Petitioner challenges an August 1999 conviction for Possession of Narcotics Connecticut Superior Court docket number S20N-CR97-0076561-2, and an October 2000 conviction for Sale of Narcotics, Connecticut Superior Court docket number S20N-CR99-0085485-S.  Petitioner argues that the court cannot rely on prior convictions in computing his criminal history score unless he admits in the record that they belong to him.  Petitioner claims that he received ineffective assistance of counsel because his counsel failed to raise this issue.

In the Presentence Report, the probation office reported that it had requested the records for both of these convictions from the responsible police departments, and in both cases received a response noting that the records had been destroyed, and were thus unavailable to the probation office or the court at the time of Petitioner's sentencing.  [PSR at ¶¶ 24-25.]  However, the Presentence Report does show that the probation office was able to obtain court records for both of these convictions, sufficient to determine that Petitioner had counsel for

both convictions and entered an *Alford* plea in both cases.  Although the police department records no longer exist, Petitioner does not argue in his brief that these convictions are incorrectly attributed to him, and has put forward no evidence to show that any false information influenced his criminal history score and the resulting sentence.  Nor did Petitioner challenge these convictions at his sentencing hearing, despite having the opportunity to address the court.  [Sent. Tr. at 13:4-21].  Further, Petitioner's attorney did not challenge the use of these convictions.  [Sent. Tr. at 3:11-21.]  This challenge to Petitioner's criminal history score is thus denied.  *Cf. Douglass v. United States*, No. 07-3310, 2009 U.S. Dist. LEXIS 49137, *13-15 (C.D. Ill. June 11, 2009) (denying petitioner's challenge to criminal history score where the court file for one of the prior sentences had been destroyed).  To the extent that Petitioner styles this as a claim for ineffective assistance of counsel, he has presented no evidence to show that his attorney's conduct was in any way deficient, nor is he able to show that he suffered any undue prejudice as a result of his attorney's conduct, and the claim thus fails.

### b.  October 2000 *Alford* Plea

Petitioner argues in Part VIII of his petition that his October 2000 conviction for Sale of Narcotics should not have been included in his criminal history score, because he entered an *Alford* plea in that case.  Although an *Alford* plea may be insufficient to support a second-offender information filed under 21 U.S.C. § 851(a)(1) and trigger the increased mandatory minimum provision of 21 U.S.C. § 841(b)(1), *see, e.g.*, *Rocky Samas v. United States*, No. 3:10-cv-422, 2011 U.S. Dist. LEXIS 5671, at *5-12 (D. Conn. Jan. 20, 2011) (granting resentencing on

petitioner's section 2255 motion where the government had filed a section 851(a)(1) second-offender information based on a state court conviction entered pursuant to an *Alford* plea, the state court charging documents had not specified the drug involved, and the state drug statute criminalized conduct falling outside the federal second offender provision),[10] it is a sufficient basis for a conviction counted as part of a defendant's criminal history score.  *See United States v. Mackins*, 218 F.3d 263, 269 (3d Cir. 2000) (finding that an *Alford* plea is a "prior sentence" for the purposes of section 4A1.1 and that the district court did not err in including a sentence entered pursuant to an *Alford* plea in defendant's criminal history category).  Petitioner's claim that his attorney was ineffective for failure to challenge this conviction is again futile.

## C.  Motion for Sentence Modification Under 18 U.S.C. § 3582(c)

In Part IV of his petition, Petitioner argues (1) that he is eligible for a sentence modification pursuant to 18 U.S.C. § 3582(c) and the Fair Sentencing Act of 2010, and (2) that his counsel was ineffective for failing to seek a two offense level reduction pursuant to note 10(D)(i) to Guidelines section 2D1.1(c). Petitioner is wrong on both claims.

## 1. Motion for Modification of Sentence

Section 3582(c) allows a court to modify an imposed term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the

---

[10] The petitioner in *Rocky Samas v. United States* is apparently the twin brother of the Petitioner in the instant case.  [Dkt. 9 at 26.]

defendant . . . , the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(2) (2014).  If the Sentencing Commission "reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."  28 U.S.C. § 994(u) (2014).

The Supreme Court has set forth a two-step inquiry for applying section 3582(c):  "A court must [1] first determine that a reduction is consistent with § 1B1.10 before it may [2] consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Dillon v. United States*, 560 U.S. 817, 826 (2010).

Section 1B1.10 of the Sentencing Guidelines addresses retroactive reductions in the term of imprisonment, providing:

> In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2).  As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.

U.S.S.G. § 1B1.1(a)(1) (Nov. 2011).

The Guidelines also specify that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . (B) an amendment listed in

subsection (c) does not have the effect of lowering the defendant's applicable guideline range."  U.S.S.G. § 1B1.10(2) (Nov. 2011).  The Guidelines further provide that in determining whether and how much to reduce a defendant's sentence, the court "shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced."  U.S.S.G. § 1B1.10(b)(1) (Nov. 2011).  Section 1B1.10(c) provides the list of amendments to the Guidelines that are eligible for retroactive application, and includes the amendment applicable to this case, Amendment 750, effective November 1, 2011, although only parts A and C of that amendment are made retroactive.  U.S.S.G. § 1B1.10(c) (Nov. 2011).

Part A of Amendment 750 makes the amendments to the drug quantity equivalency tables retroactive.  U.S.S.G. App. C, Am. 750, Part A (Nov. 2011).  However, retroactive application of the drug equivalency tables effective November 1, 2011 has no effect on Petitioner's sentence.  Under the drug equivalency tables effective November 1, 2011, 352 grams of cocaine base is equivalent to 1,257 kilograms of marijuana, and 398 grams of cocaine is equivalent to 79.6 kilograms of marijuana, for a total of 1,336.6 kilograms of marijuana.  U.S.S.G. § 2D1.1, comment. (n.10(D)) (Nov. 2011).  That amount of marijuana yields a base offense level of 32, which is two levels lower than the base offense level of 34 calculated at Petitioner's sentencing.  However, the November 1, 2011 amendment to the Guidelines also eliminated the two offense level reduction applied to cases involving cocaine base and other controlled

substances, previously found at Application Note 10(D)(i).  U.S.S.G. App. C., Am. 750, Reason for Amendment (Nov. 2011); *see also United States v. Jackson*, 504 Fed. Appx. 800, 802-03 (11th Cir. 2013) (noting the elimination of the two level reduction previously found in section 10(D)(i)) (citations omitted).  As a result, the Petitioner's adjusted offense level remains the same following the November 1, 2011 amendment, as Petitioner would still receive a two level increase for possession of a firearm during the offense pursuant to section 2D1.1(b)(1), and a three level decrease under sections 3E1.1(a) and (b), bringing him to 31.  The guidelines range for a defendant with an offense level of 31 and a criminal history category of V have not changed since Petitioner's sentencing, meaning the range would remain 168-210, and no change in Petitioner's sentence is permissible. *See* U.S.S.G. § 1B1.10(a)(2)(B) (Nov. 2011) (prohibiting a reduction in a defendant's term of imprisonment if the amendment "does not have the effect of lowering the defendant's applicable guideline range").  Because Petitioner fails the first step of the *Dillon* inquiry, there is no need to proceed to the second step.

Nor does the Fair Sentencing Act of 2010's revision to the text of section 841(b)(1)(iii)  mandate a lower sentence, as asserted by Petitioner.  [Pet. at 13.] To begin with, although the Act raised the threshold amount required to trigger the ten year mandatory minimum of 18 U.S.C. § 841(b)(1)(iii) from 5 grams to 280 grams, Pub. L. No. 111-220, 124 Stat. 2372 (2010), Petitioner stipulated in his plea agreement to possessing 352 grams of cocaine base, and thus the mandatory minimum still applies.  Petitioner argues that he "was sentenced for pleading guilty to 50 grams of crack cocaine" and that he "plead guilty to Count One of the

Indictment of 50 grams."  [Pet. at 13.]  However, Count One of the Indictment charged Petitioner with possession with the intent to distribute "50 grams *or more*" of cocaine base,  [Indictment at 1 (emphasis added)], and Petitioner stipulated to the possession of 352 grams, making the amendment to section 841(b)(1)(iii) inapplicable to Petitioner.  Further, even if Petitioner had hypothetically been convicted of having fewer than 280 grams of cocaine base, the Fair Sentencing Act applies only to those sentenced after August 3, 2010. *United States v. Humphries*, 502 Fed. Appx. 46, 47 (2d Cir. 2012) ("The FSA does not apply retroactively to defendants who were convicted and sentenced prior to August 3, 2010.") (citation omitted).  Petitioner was sentenced on January 8, 2010, and is thus ineligible for retroactive application of the Fair Sentencing Act.

Because Petitioner is clearly ineligible for sentence modification under section 3582(c), the Court need not reach here the question of whether Petitioner's section 3582(c) motion is barred by the waiver provision in the Plea Agreement.

## 2.  Two Level Reduction for Cocaine Base

In Petitioner's second argument in Part IV, he asserts that he did not receive the two level reduction provided at the time of his sentencing by note 10(D)(i) to Guidelines section 2D1.1(c), and that his counsel was ineffective in not moving for him to receive such reduction.  However, this claim has no merit, as the Presentence Report makes clear that such reduction was applied to Petitioner.  [PSR at ¶ 15.]  As a result, Petitioner cannot show either that his

counsel's conduct was deficient or that he was unduly prejudiced by his counsel's conduct, and his claim is denied.

## CONCLUSION

For the above-listed reasons, Petitioner's habeas petition and his motion for sentence modification are DENIED.  Because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), no hearing need be held on this habeas petition, nor will the Court hold a hearing on the motion for sentence modification.  Finally, because the Petitioner has not made "a substantial showing of the denial of a constitutional right", the Court will not issue a certificate of appealability in regards to Petitioner's section 2255 habeas claims.  28 U.S.C. § 2253(c)(2). The Clerk is ordered to close this case.

It is so ordered.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: April 23, 2014.